The Honorable Randy Laverty State Representative P.O. Box 303 Jasper, Arkansas 72641-0303
Dear Representative Laverty:
This official Attorney General opinion is rendered in response to two questions you have raised concerning referendum petitions. You have asked:
 (1) What is the required number of signatures by qualified electors on a referendum petition for submission of a county bond ordinance to a vote of the people if there was no tabulation of the votes cast in the last general election for the office of circuit clerk?
 (2) When must the referendum petitions be filed with the county clerk to refer a county bond ordinance to a vote of the people?
 (3) Is there a procedure to give the petitioners any more time to obtain signatures if the petitions do not have enough signatures initially?
RESPONSE
Question 1 — What is the required number of signatures by qualifiedelectors on a referendum petition for submission of a county bondordinance to a vote of the people if there was no tabulation of the votescast in the last general election for the office of circuit clerk?
It is my opinion that although Arkansas law does not specifically address a situation where there was no tabulation of the votes cast in the last general election for the office of circuit clerk, it does provide authority upon the basis of which the county clerk, in such a situation, can require that a referendum petition for submission of a county bond ordinance to a vote of the people be signed by at least 15% of the qualified electors who voted in the last general election for the office of governor.
The number of signatures required on referendum petitions is addressed by the provisions of A.C.A. § 14-14-914. That statute states in pertinent part:
 (c) PETITION BY ELECTORS. The qualified electors of each county may initiate and amend ordinances and require submission of existing ordinances to a vote of the people by petition if signed by not less than fifteen percent (15%) of the qualified electors voting in the last general election for the office of circuit clerk, or the office of Governor where the electors have abolished the office of circuit clerk.
A.C.A. § 14-14-914(c). This provision is authorized by Amendment7 to the Arkansas Constitution, which states:
 General laws shall be enacted providing for the exercise of the initiative and referendum as to counties. Fifteen per cent of the legal voters of any municipality or county may order the referendum, or invoke the initiative upon any local measures. In municipalities the number of signatures required upon any petition shall be computed upon the total vote cast for the office of mayor at the last preceding general election; in counties, upon the office of Circuit Clerk.
ARK. CONST., am. 7.
Both Amendment 7 and A.C.A. § 14-14-914 require calculation of signatures on the basis of the last general election for circuit clerk. In a situation where there was no tabulation of the votes cast in the last general election for the office of circuit clerk, strict compliance with A.C.A. § 14-14-914 and Amendment 7 is impossible.[1]
In Czech v. Munson, 280 Ark. 219, 656 S.W.2d 696 (1983), the Arkansas Supreme Court addressed a situation in which compliance with the similar provision for municipalities had become impossible. As explained below, the court concluded that it was permissible to look to another election for the purpose of calculating signatures.
Amendment 7 to the Arkansas Constitution requires that municipalities calculate the required number of signatures on initiated petitions on the basis of the votes cast in the last general election for the office of mayor. Because cities that operate under the city manager form of government do not have elections for mayor, the legislature passed Ark. Stat. Ann. § 19-717 [now, A.C.A. § 14-47-124], which allows cities operating under the city manager form of government to calculate the required number of signatures on the basis of the last general election for the position of city director.
The plaintiffs in Czech v. Munson contended that this statute was unconstitutional because it conflicted with Amendment 7. The court rejected the claim, explaining:
 When the legislature abolished the elective office of mayor in giving cities the option of adopting a city manager form of government, which Little Rock did many years ago, the lawmakers filled the gap that would otherwise have existed by adopting a minimum signature requirement based on the highest vote for a city director.
Czech v. Munson, 280 Ark. 219, 221, 656 S.W.2d 696 (1983).
It is my opinion that Czech v. Munson provides authority for looking to another election for the purpose of calculating signatures in situations where strict compliance with the statutory or constitutional requirement is impossible.
The legislature addressed one such situation for counties: the situation in which a county has abolished the position of circuit clerk. In those counties that have abolished the position of circuit clerk, the required number of signatures is to be calculated upon the basis of the votes cast in the last general election for the office of governor.
I must note again that neither Arkansas statutory law, nor any published decision of the Arkansas courts has addressed the situation that you have described. The question you have raised can only be answered definitively by a court or by legislative clarification. In the absence of such judicial or legislative clarification, I find that because the legislature has suggested looking to the election for governor in one situation where compliance with A.C.A. § 14-14-914 is impossible, and in light of the court's decision in Czech v. Munson, it would be reasonable to look to the election for governor for the purpose of calculating signatures in other situations where compliance would be impossible, such as the situation in which the votes were not tabulated in the last general election for the office of circuit clerk (and cannot be tabulated).
Question 2 — When must the referendum petitions be filed with the countyclerk to refer a county bond ordinance to a vote of the people?
It is my opinion that referendum petitions concerning county bond ordinances must be filed with the county clerk within thirty days after the adoption of the bond ordinance.
This question is directly addressed by A.C.A. § 14-14-919, which states:
14-14-919. Referendum petitions on county bond issue.
 All referendum petitions under Arkansas Constitution, Amendment 7, against any measure, as the term is used and defined in Arkansas Constitution, Amendment 7, pertaining to a county bond issue must be filed with the county clerk within thirty (30) days after the adoption of any such measure.
A.C.A. § 14-14-919.
A question may arise concerning the applicability of A.C.A. § 14-14-915, which sets forth various requirements for initiative and referendum petitions, including a filing deadline that differs from the one set forth in A.C.A. § 14-14-919. Section (b) of that statute addresses the filing requirement, stating:
14-14-915. Initiative and referendum requirements.
(b) TIME REQUIREMENTS FOR FILING PETITIONS.
* * *
 (2) REFERENDUM PETITIONS. All petitions for referendum on county measures must be filed with the county clerk within sixty (60) calendar days after passage and publication of the measure sought to be repealed.
A.C.A. § 14-14-915(b)(2).
It is my opinion that the filing of referendum petitions on county bond ordinances is not governed by A.C.A. § 14-14-915(b)(2), quoted above, but rather is governed by A.C.A. § 14-14-919. The provisions of A.C.A. §14-14-919 are more specific than those of A.C.A. § 14-14-915(b)(2). The Arkansas courts have held that where two statutes address the same subject, one of which is more specific than the other, the more specific will govern. See, e.g., Sunbelt Courier v. McCartney, 31 Ark. App. 8,786 S.W.2d 121 (1990), aff'd 303 Ark. 522, 798 S.W.2d 92 (1990); Thomas v.Easley, 277 Ark. 222, 640 S.W.2d 797 (1982).
A question may also arise concerning the consistency of A.C.A. §14-14-919 with Amendment 7 to the Arkansas Constitution, which provides:
 General laws shall be enacted providing for the exercise of the initiative and referendum as to counties.
* * *
 In municipalities and counties the time for filing an initiative petition shall not be fixed at less than sixty days nor more than ninety days before the election at which it is to be voted upon; for a referendum petition at not less than thirty days nor more than ninety days after the passage of such measure by a municipal council . . .
ARK. CONST., am. 7 (emphasis added).
It is my opinion that A.C.A. § 14-14-919 does not conflict with the above-quoted portion of Amendment 7. Rather, it is my opinion that Amendment 7 sets forth the range within which the General Assembly is authorized to set the filing requirement. In setting the filing requirement at thirty days after passage (in A.C.A. § 14-14-919), the General Assembly acted within the authority granted by Amendment 7. Therefore, A.C.A. § 14-14-919 is consistent with the requirements of Amendment 7.
For these reasons, I conclude that referendum petitions concerning county bond ordinances must be filed with the county clerk within thirty days after the adoption of the ordinance.
Question 3 — Is there a procedure to give the petitioners any more timeto obtain signatures if the petitions do not have enough signaturesinitially?
It is my opinion that this question is directly addressed by A.C.A. §§14-14-915(e) and (f), which state:
14-14-915. Initiative and referendum requirements.
 (e) INSUFFICIENCY OF PETITION AND RECERTIFICATION. If the county clerk finds the petition insufficient, the clerk shall, within ten (10) days after the filing thereof, notify the petitioners or their designated agent or attorney of record, in writing, setting forth in detail every reason for the findings of insufficiency. Upon notification of insufficiency of petition, the petitioners shall be afforded ten (10) calendar days, exclusive of the day notice of insufficiency is receipted, in which to solicit and add additional signatures, or to submit proof tending to show that signatures rejected by the county clerk are correct and should be counted. Upon resubmission of a petition which was previously declared insufficient, the county clerk shall, within five (5) calendar days, recertify its sufficiency or insufficiency in the same manner as prescribed in this section and, thereupon, the clerk's jurisdiction as to the sufficiency of the petition shall cease.
 (f) APPEAL OF SUFFICIENCY OR INSUFFICIENCY FINDINGS. Any taxpayer aggrieved by the action of the clerk in certifying the sufficiency or insufficiency of any initiative or referendum petition, may within fifteen (15) calendar days, but not thereafter, may file a petition in chancery court for a review of the findings.
A.C.A. § 14-14-915(e)(f) (emphasis added).
Under the unambiguous provisions of section (e), quoted above, the petitioners are allowed ten days after they receive notification from the county clerk of the insufficiency of the petition within which to obtain additional signatures. The petitioners may also appeal the county clerk's determination of insufficiency with fifteen days of that determination.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] It might be noted that the burden of establishing the true impossibility of obtaining a tabulation of the votes cast will, of course, rest on the county.